UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASHRAF  MAHMOUD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-cv-1758 |
| | § | |
| DE MOSS OWNERS ASSOCIATION, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Pending before the Court are the following:  (1) the plaintiffs', Valerie Jackson and Ashraf Mahmoud (the "plaintiffs"), motion for partial summary judgment (Dkt. No. 31), and responses and replies thereto (Dkt. Nos. 36, 39, 42 & 43); the defendants, Frank, Elmore, Lievens, Chesney & Turet, L.L.P. and Kristi Slaughter motions for summary judgment (Dkts. No. 60 & 62), and responses and replies thereto (Dkt. Nos. 70 & 75)[1]; and the defendants, De Moss Owners Association, Inc. and Creative Management Company, motion for summary judgment (Dkt. No. 64) and responses and replies thereto (Dkt. Nos. 74 & 76).  After having conducted a hearing on this matter and having carefully considered the motions, responses, replies, pleadings, the record,

---

[1] In their response in opposition to the defendants' motion for summary judgment, the plaintiffs' move to strike various portions of Slaughter's Affidavit filed in support of the attorney defendants' motion for summary judgment, on the grounds that many of her statements contain impermissible opinion testimony, are not based on her personal knowledge, lack foundation, are speculative and/or contain hearsay.  Slaughter's Affidavit, however, is exactly the same affidavit that was previously filed by the defendants some time ago as support for their responses to the plaintiffs' motion for partial summary judgment.  (*See* Dkt. Nos. 36 & 39).  At the time of its initial filing, however, the plaintiffs merely objected to Exhibit A-4 attached thereto, the Certificate of Corporate Resolution, on hearsay grounds.  The Court, therefore, determines the plaintiffs' objections in this regard to be untimely and deems them waived.  All other objections made by the parties with regard to the evidence presented in support of the various motions for summary judgment are otherwise overruled.  *See Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (quoting *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976)).  It is well-settled law that "[e]vidence inadmissible at trial cannot be used to avoid summary judgment."

and the applicable law, the Court determines that the defendants' motions for summary judgment should be **GRANTED**; and the plaintiffs' motion for partial summary judgment should be **DENIED**.

## II.     FACTUAL OVERVIEW

This is an unfair debt collection and wrongful foreclosure case involving the plaintiffs' condominium unit in Houston, Texas.   The defendant, De Moss Owners Association, Inc. (the "Association"), is the owners' association that governs the condominium complex.  The defendant, Creative Management Company ("CMC"), manages the day-to-day affairs of the condominium complex for the Association.  On or about January 25, 2001, the plaintiffs purchased Condominium Unit No. 806 (the "Unit") and became bound by the Declaration and Bylaws of the Association.

Pursuant to Section 5.1 of the Declaration, every unit owner is required to pay monthly assessments, and under Section 5.9 of the Declaration, the Association is granted a lien against each unit to secure payment of those assessments.  The plaintiffs acknowledge that as property owners, they are required to pay monthly assessments.   When the Declaration was filed in 1981, Section 5.1 authorized the Association to charge a late fee in the amount of $5.00 for each assessment paid after the 15th of each month.  The plaintiffs do not dispute that they were obligated to pay their assessments by the 15th of each month or else be subject to late fees.   Twenty-six years later, in 2007, the Association's Board authorized an increase in the late fee to $25.00 pursuant to the statutory power to assess and

impose late fees granted to the Board under Tex. Prop. Code § 82.102(a)(12).[2]   This resolution was not filed in the real property records until February 2014, subsequent to the January 1, 2012 effective date of the applicable property code provision requiring the same. Beginning in June 2009, the plaintiffs' assessment payments became increasingly irregular and repair costs, together with rule violation fines, continued to be assessed against their Unit's account.   By October 5, 2012, the total balance due on their account had reached $2,171.80.

The Association hired the defendant, Attorney Kristi Slaughter  ("Slaughter") with the law firm of Frank, Elmore, Lievens, Chesney & Turet, LLP ("the law firm") ("Slaughter" and "the law firm" together, the "attorney defendants") to collect on the debt associated with the plaintiffs' Unit.  Accordingly, pursuant to a two-page demand letter dated October 8, 2012, Slaughter advised the plaintiffs that unless the balance on their Unit account was paid in full on or before the expiration of thirty (30) days from the date of the letter, the Association would commence foreclosure proceedings against their Unit.  At the very top of the second page of the letter, Slaughter included a debt validation notice, advising the plaintiffs of the law firm's attempt to collect a debt and further informing them that they had thirty days within which to dispute the debt.  On November 12, 2012, Slaughter sent the plaintiffs a foreclosure notice advising them that their Unit had been posted for foreclosure sale scheduled for December 4, 2012, and returning checks forwarded by the plaintiffs on November 9, 2012, covering the three most recent monthly assessment payments.  Slaughter

---

[2] Tex. Prop. Code § 82.102(a)(12) provides, in relevant part, that:  "Unless otherwise provided by the declaration, the association, acting through its board, may:  . . . impose interest and late charges for late payments of assessments, returned check charges, and, if notice and an opportunity to be heard are given in accordance with Subsection (d), reasonable fines for violations of the declaration, bylaws and rules of the association."

further advised the plaintiffs that if they wished to submit a payment plan to the Board, they needed to do so, have it approved and reduced to writing prior to the foreclosure sale.  The foreclosure sale date was eventually rescheduled for February 5, 2013, in an attempt to work toward resolving the plaintiffs' outstanding debt.

On February 5, 2013, the plaintiff's Unit was sold to Khosrow Abtahi, who submitted and paid the highest bid of $18,500.00.  After deducting the amount owed to the Association, $13,638.20 in excess proceeds remained.   Because it received no claims to the excess proceeds, on February 20, 2014, the law firm paid $13,638.20 to the plaintiffs.   Abtahi commenced eviction proceedings against the plaintiffs which were subsequently dismissed for want of prosecution on July 1, 2013.  By deed dated June 17, 2013, Abtahi conveyed the Unit back to the plaintiffs.  Thus, the plaintiffs were never forced out of the Unit.

On June 14, 2013, the plaintiffs commenced the instant action against the defendants alleging that they violated both state and federal debt collection and/or consumer protection statutes by, *inter alia*, conducting a foreclosure sale premised on time-barred amounts[3] and amounts improperly added to the lien balance.   The defendants now move for summary judgment on all of the plaintiffs' claims.   The plaintiffs have also filed a motion for partial summary judgment, seeking summary judgment as to liability, leaving damages and attorneys' fees to be decided at trial.

## III.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the

---

[3] The plaintiffs appear to allege that only $541.80 of the approx. $2,000 debt is potentially time-barred.

party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted).  When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).  Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).  Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## IV.    ANALYSIS AND DISCUSSION

### A.  The Plaintiffs' Claim for Violation of the Fair Debt Collection Practices Act

The plaintiffs, in their First Claim for Relief referenced in their First Amended Complaint, allege that they are "consumers" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3), and the attorney defendants, as debt collectors, sought to collect a debt from them by way of false, deceptive and misleading

representations and unfair or unconscionable means in violation of the FDCPA.  (*See* Dkt. No. 4, ¶¶ 47 – 52).   They also assert that the debt validation notices contained in the defendants' demand letters, as required by 15 U.S.C. § 1692g, were overshadowed and/or contradicted by the contents contained in the demand portion of such letters.  (*Id.*)   As such, the plaintiffs assert that they are entitled to statutory damages, actual damages, attorneys' fees and costs for the defendants' numerous violations.  (*Id.*, ¶ 52).

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp.2d 619, 626 (S.D. Tex. 2010) (quoting 15 U.S.C. § 1692(e)).   A "debt collector" is defined, within the meaning of the FDCPA, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."   15 U.S.C. § 1692a(6).   "The activity of foreclosing on a property pursuant to a deed of trust[, however,] is not the collection of debt within the meaning of the FDCPA."  *Bittinger*, 744 F. Supp.2d at 626 (citing *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp.2d 176, 190 (S.D. Tex. 2007), *aff'd*, 269 Fed. Appx. 523 (5th Cir. 2008)); *see also Brown v. Morris*, No. 04-60526, 2007 WL 1879392, at 3 (5th Cir. June 28, 2007) (acknowledging that the Fifth Circuit has "implicitly recognized that a foreclosure is *not per se* FDCPA debt collection.").

Additionally, the defendants' actions cannot be deemed "unfair" or "unconscionable" under the FDCPA since the plaintiffs were in default at the time of the foreclosure sale and

the attorney defendants relied on the Associations and/or CMC's representations as to the underlying basis for conducting the foreclosure sale, as permitted by law.  *See* 15 U.S.C. § 1692f (allowing a FDCPA claim for collecting a debt utilizing unfair or unconscionable means); Tex. Prop. Code § 51.007(f) (stating that a trustee shall not be liable for any good faith error resulting from reliance upon information provided by a mortgagee or their respective attorney, agent or other third party).  Further, a non-debt collector, such as the Association and/or CMC, generally cannot be held vicariously liable for a debt collector's purported FDCPA violations.  *See Boles v. Moss Codilis, LLC*, Civil Action No. 2011 WL 2618791, at *4 (W.D. Tex. July 1, 2011) (noting that "several courts have rejected the notion of holding a creditor or other non-debt collector vicariously liable for the actions of a debt collector.").  Finally, this Court determines that nothing in the attorney defendants' demand and/or debt-collection letters overshadowed or contradicted the validation notices contained therein so as to constitute a violation of § 1692g.  *See Osborn v. Ekpsz, LLC*, 821 F. Supp.2d 859, 875 (S.D. Tex. 2011) (holding that debt collector did not violate § 1692g by demanding that consumer contact it "within the next thirty (30) days" or it would notice her deposition and require document production where such demand was followed by a validation notice clearly stating that consumer had a right to dispute the debt and request validation within 30 days of receipt of the letter).  Hence, the defendants are entitled to judgment as a matter of law on the plaintiffs' claims brought pursuant to the FDCPA.

**B.      The Plaintiffs' Claim for Violation of the Texas Debt Collection Act**

The plaintiffs, in their Second Claim for Relief referenced in their First Amended Complaint, allege that the attorney defendants are "third-party debt collectors" and, as such, are liable under the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code §§ 392.001, for

multiple violations.  (Dkt. No. 4, ¶¶ 54 - 64).  They also contend that because Slaughter and the law firm acted as attorneys for the Association and/or CMC in their debt collection efforts, the Association and CMC are liable for their unlawful acts.  (*Id.*)

The TDCA "prohibits debt collectors from using various forms of threatening, coercive, harassing, or abusive conduct to collect debts from consumers."  *Porterfield v. JP Morgan Chase, N.A.*, No. SA-12-CV-815-DAE, 2014 WL 3587783, at 21 (W.D. Tex. July 21, 2014).  A "debt collector" within the meaning of the Act is defined, in relevant part, to include "a person who directly or indirectly engages in debt collection."  Tex. Fin. Code § 392.001(6).  The TDCA "protects 'consumers' and the only prerequisite to 'consumer' status is having a 'consumer debt.'"  *Id.* (citing Tex. Fin. Code § 392.001(1)).  A "consumer debt" under the TDCA is defined as "an obligation, or alleged obligation, primarily for personal, family or household purposes and arising from a transaction or alleged transaction."  Tex. Fin. Code § 392.001(2).  The plaintiffs in this case allege that the defendants committed at least six violations of the TDCA in foreclosing the Association's lien, specifically including violations of Tex. Fin. Code §§ 392.101, 392.304(a)(5), 392.301(a)(8), 392.303(a)(2), 392.303, and 392.304(a)(8).

Even assuming arguendo that the attorney defendants are construed to be "debt collectors" for purposes of the TDCA, this Court is of the opinion that the plaintiffs do not state a colorable claim for violations of §§ 392.101, 392.304(a)(5), 392.301(a)(8), 392.303(a)(2), 392.303 or 392.304(a)(8).  The plaintiffs allege that the attorney defendants violated Tex. Fin. Code § 392.101, by failing to have a $10,000 bond on file with the Texas Secretary of State.  The plaintiffs also allege that the attorney defendants violated Tex. Fin. Code § 392.304(a)(5), by failing to give certain disclosures described therein.  Both of the aforementioned provisions,

however, based on their plain language, are inapplicable to the defendants as they apply only to "third-party debt collectors,[4]" which, in accordance with its statutory definition, does not include "attorney[s] collecting a debt as [] attorney[s] on behalf of and in the name of a client." *See* Tex. Fin. Code § 392.001(7).[5]

Next, the plaintiffs allege that the attorney defendants violated 392.301(a)(8), by using threats and coercion and then taking action, such as foreclosure, which was prohibited by law.[6] Courts have specifically held that the TDCA does not prevent debt collectors from conducting a non-judicial foreclosure pursuant to a power of sale and/or deed of trust. *See Carrillo v. Bank of Am., N.A.*, No. 12-cv-3906, 2013 WL 1558320, at *7 (S.D. Tex. Apr. 11, 2013). In fact, the TDCA expressly states that it "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3). Moreover, § 51.002 of the Texas Property Code authorizes non-judicial foreclosure proceedings, thus there was no violation of § 392.301(a)(8) by the defendants.

The plaintiffs also allege that the attorney defendants violated 392.303(a)(2), by using unfair or unconscionable means to collect charges and fees that were not expressly

---

[4] Tex. Fin. Code § 392.101, by its express terms applies to "[a] third-party debt collector *or* credit bureau."

[5] Tex. Fin. Code § 392.001(7) provides as follows:

(7) "Third-party debt collector" means a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who:

(A) are regularly engaged to solicit debts for collection; or

(B) regularly make contact with debtors for the purpose of collection or adjustment of debts.

[6] The plaintiffs also disingenuously allege that to the extent the late fees gave rise to a lien, "the lien could only have been foreclosed through judicial action and not at a non-judicial trustee sale." The documents contained in the record, particularly the Declaration, establishes the contrary. *See* Dkt. No. 31, Ex. B § 5.9; *see also* Dkt. No. 60, Ex. A-1.

authorized by the Declaration or legally chargeable to them.[7]  Specifically, the plaintiffs contend that the Declaration did not authorize an increase in the late fee from $5 to $25. Although the Declaration initially authorized that a late fee in the amount of $5 may be imposed as an assessment, nothing contained therein prevented the Association's Board from ever increasing this fee amount.  Additionally, § 82.102(a)(12) of the Texas Property Code expressly provides that "[u]nless otherwise provided by the declaration, the association, acting through its board, may . . .  impose interest and late charges for late payments of assessments, returned check charges, and, if notice and an opportunity to be heard are given . . . reasonable fines for violations of the declaration, bylaws, and rules of the association." Tex. Prop. Code § 82.102(a)(12).   "Assessments" are defined within the meaning of the Texas Property Code to include "regular and special assessments, dues, fees, charges, interest, late fees, fines, collection costs, attorney's fees, and any other amount due to the association by the unit owner or levied against the unit by the association, all of which are enforceable as assessments under this section unless the declaration provides otherwise." Tex. Prop. Code § 82.113(a).   The Texas Property Code further provides that "[a]n assessment levied by the association against a unit or unit owner is a personal obligation of the unit owner and is secured by a continuing lien on the unit and on rents and insurance proceeds received by the unit owner and relating to the owner's unit." *Id.*  When, where as here, the Declaration does not prohibit the Association's Board from increasing the late fee

---

[7] In their motion for partial summary judgment, the plaintiffs assert as an additional violation that the defendants used false, deceptive and misleading representations and unfair or unconscionable means to collect a debt, including the impermissible $25 late fee in violation of Tex. Fin. Code § 392.304.   This claim fails for similar reasons stated above.

amount, the Association acted well within its right to increase the late fee amount from $5 to $25 and its actions in this regard cannot be deemed "unfair" or "unconscionable."

The plaintiffs further allege that the attorney defendants violated 392.304(a)(8)[8], by using fraudulent, deceptive or misleading representations "by misrepresenting the amount of the debt (including the $25 late fee when the Declaration only authorizes imposition of a $5 late fee)." (Dkt. No. 31 at 22, ¶ 4). The plaintiffs claim in this regard pertaining to the $25 late fee fails for the same reasons stated above. Finally, with respect to the plaintiffs' claims regarding any other disputed debt amounts and/or older charges, based on plaintiff Valerie Jackson's *own* admissions, there were no incorrect or misrepresented amounts that she could, indeed, attest to on the Resident Transaction Report. (*See* Dkt. No. 64, Ex. B. at 154:10 – 155:16). Without more, the plaintiffs have failed to raise a genuine issue of material fact on their TDCA claims and the defendants are entitled to judgment as a matter of law on the plaintiffs' claims for violations of the TDCA.

## C.   The Plaintiffs' Claim for Violation of the Deceptive Trade Practices Act

The plaintiffs, in their Third Claim for Relief referenced in their First Amended Complaint, allege that the defendants are liable under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.01 – 17.926, for the same conduct discussed at length above. In order to state a claim under the DTPA, a plaintiff must establish that: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Taylor v.*

---

[8] The plaintiffs also appear to allege that the defendants violated this section by making threats to foreclose in December 2012, without actually ever intending to do so. This claim fails as well because it is unsupported by the evidence contained in the record and the plaintiffs have offered no evidence to otherwise support such a theory. Conclusory assertions, without more, will not suffice.

*Ocwen Loan Servicing, LLC*, Civil Action No. H-12-2929, 2013 WL 3353955, at *4 (S.D. Tex. July 3, 2013) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)).  To qualify as a "consumer" under the DTPA, a plaintiff must have sought or acquired goods or services by purchase or lease, and the goods or services must form the basis of the complaint.  *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 708 (Tex. 1983)); *see also Miller Cushman v. GC Servs., LP*, 657 F. Supp.2d 834, 843 (S.D. Tex. 2009); Tex. Bus. & Com Code § 17.45(4).

Here, the plaintiffs are not "consumers" within the meaning of the DTPA because the basis of their claims concerns alleged wrongful foreclosure activities, rather than the purchase or lease of goods or services.  The payment of monthly maintenance fees to a condominium association does not constitute a "purchase" under the DTPA, such that a unit owner, like the plaintiff, would qualify as a consumer.  *See Riddick v. Quail Harbor Condo. Ass'n, Inc.*, 7 S.W.3d 663, 669 - 70 (Tex. App.–Houston [14 Dist.] 1999) (reasoning that condo unit owner's payment of monthly maintenance fees to its association did not constitute a "purchase" within the meaning of the DTPA).  The plaintiffs' claim that they are consumers because they sought or acquired condominium management services for which they were charged is without merit.  Thus, because the plaintiffs cannot demonstrate "consumer" status under the DTPA, they "cannot maintain a DTPA action, and cannot claim DTPA damages under a tie-statute, such as the TDCA." *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09–CV–370, 2010 WL 1026968 at *9 (E.D. Tex. Feb. 16, 2010).  Accordingly, the defendants are entitled to a summary judgment on the plaintiffs' DTPA claim.

### D.      The Plaintiffs' Claim for Wrongful Foreclosure

The plaintiffs, in their Fourth Claim for Relief, allege that all of the defendants are liable for wrongfully foreclosing on their Unit.  The plaintiffs contend that they are entitled to recover damages for wrongful foreclosure because there were multiple irregularities in the foreclosure sale that caused them damages.  (Dkt. No. 4 at ¶ 77 at 24).  "Under Texas common law, a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price for the property."  *Matthews v. JPMorgan Chase Bank, NA*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011) (citing *Am. Sav. & Loan Ass'n of Hous. v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975)).  "The elements of a wrongful foreclosure claim are:  (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.- Corpus Christi 2008, no pet.); *see also Pollett v. Aurora Loan Servs.*, No. 11-50059, 2011 WL 6412051, at *1 (5th Cir. Dec. 21, 2011).

Although the plaintiffs have alleged that there were "multiple irregularities" in the foreclosure sale of the Unit, they have set forth no evidence identifying any alleged defects or irregularities in the foreclosure sale.  The record demonstrates that the attorney defendants followed the procedures required under the Texas Property Code for providing proper notice of the foreclosure sale and for conducting the sale.  No competent summary judgment evidence has been adduced establishing that there was a defect in the foreclosure sale proceedings or that the ultimate sales price of $18,500.00 was a "grossly inadequate" sales

price.[9]  Additionally, the plaintiff, Valerie Jackson, acknowledged during her deposition that she was unaware of any conduct attributable to the defendants that may have discouraged or prevented anyone from submitting a bid at the foreclosure sale with respect to the Unit.  (*See* Dkt. No. 64, Ex. B at 174:25 – 176:3.).  Moreover, no causal connection exists between any alleged sales defect and a grossly inadequate sales price.  Finally, the plaintiffs did not suffer any actionable harm since they never lost possession of the Unit.  *See Motten v. Chase Home Fin.*, 831 F. Supp.2d 988, 1007 (S.D. Tex. 2011) (citing *Baker v. Countrywide Home Loans, Inc.*, No. 3:08–CV–0916–B, 2009 WL 1810336, *4 (N.D. Tex. June 24, 2009) ("Because recovery is premised upon one's lack of possession of real property, individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure.  As such, courts in Texas do not recognize an action for attempted wrongful foreclosure.")).

Furthermore, the attorney defendants are immune from suit because they cannot be sued by the plaintiffs for actions taken within the scope of their representation of the Association.  The attorney defendants were retained by the Association to assist in the foreclosure of the Unit.  The record establishes that they had no contact with the plaintiffs beyond their capacity as "legal counsel" for the Association and they committed no wrongful acts outside of the scope of their representation.  *See Campbell v. Mortg. Elec. Registration Sys, Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *5 (Tex. App.-Austin May 18, 2012, pet. denied) ("An attorney enjoys 'qualified immunity,' with respect to non-clients, for actions taken in connection with representing a client in litigation. . . . An attorney's conduct,

---

[9]The plaintiff, Mahmoud, testified that the Unit has a fair market value of $80,000, but fails to offer any support for this valuation other than his own personal opinion, which does not constitute competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (reasoning that "unsubstantiated assertions are not competent summary judgment evidence").

even if frivolous or without merit, while potentially sanctionable by the court, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing  its client.") (internal citations omitted).  Therefore, the attorney defendants are entitled to a summary judgment on the plaintiffs' claim for wrongful foreclosure.

With regard to the defendant, CMC, it had no authority to authorize any foreclosure sale and no involvement in the sale.  As such, CMC is entitled to judgment as a matter of law with regard to the plaintiffs' wrongful foreclosure claim.

E.     **The Plaintiffs' Claim for Breach of Contract Against the Association/CMC**

The plaintiffs, in their Fifth Claim for Relief, assert that the Association and CMC were bound to act in accordance with the Declaration and By-laws and that they breached the Declaration by charging and demanding, under threats of foreclosure, amounts not properly included in the assessment lien against the Unit.  (Dkt. No. 4, First Amend. Compl. ¶ 79 at 25.)   The plaintiffs also assert that there are other wrongful amounts that form the lien, including the $25 late-fee charge and older charges for miscellaneous violations and charge-back costs for repairs.

To prevail on a breach of contract claim under Texas law, proof of the following essential elements is required:  "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.-Houston [14th Dist.] 2005, pet. denied)).  In order to be considered valid and binding, a contract must contain:  "(1) an offer; (2) an acceptance in strict compliance with the terms of

the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.- Ft. Worth 2004, pet. denied). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.- Austin 2007, pet. filed) (citing *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.-San Antonio 1999, pet. denied)). Thus, the ultimate issue of "[w]hether a contract exists involves both questions of fact—such as the intent of the parties—and questions of law—such as whether, the facts as found constitute a contract." *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991).

The plaintiffs do not dispute that they were late multiple times in paying their monthly assessments to the Association. The record establishes that the Association's governing documents as well as the Texas Property Code authorized the Association to raise the amount of the late assessment fee from $5 to $25. (*See* Dkt. No. 64, Ex. A-4). In addition, the plaintiff, Valerie Jackson, testified during her deposition that she could not swear under oath that any of the older charges were indeed incorrect because she could not remember whether such charges had been billed on the dates reflected on the Resident Transaction Report. (*See* Dkt. No. 64, Ex. B. at 154:10 – 155:16). Moreover, the Association was under no duty or obligation to accept incomplete assessment payments from the plaintiffs and its prior acceptance of such payments does not establish a "course of dealing" with the plaintiffs sufficient to constitute a waiver that would subject the Association and/or CMC to any liability. (Dkt. No. 64, Ex. A-1, § 5.9). Further, because the

plaintiffs breached the agreement by defaulting first, they cannot maintain an action for the Association's subsequent breach. *See Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (It is well-settled that "a party to a contract who is himself in default cannot maintain a suit for its breach.") (internal citations omitted).  Finally, the Court determines that the plaintiffs' claim that a contract was created by the Association's "invitation" to them to make a written request for a payment plan and was thereafter breached by the Association's failure to review and/or consider their request is unsupported by the evidence contained in the record and lacks merit.  (Dkt. No. 4, First Amend. Compl. ¶¶ 81 - 82 at 26.)  Accordingly, the Association and CMC are entitled to judgment as a matter of law on the plaintiffs' breach of contract claim.

### F.      The Plaintiffs' Claim for Negligent Misrepresentation

The plaintiffs, in their Sixth Claim for Relief, maintain that the defendants are liable for negligent misrepresentation.  Specifically, they allege that "all defendants made negligent misrepresentations in the course of their respective businesses, or in a transaction in which they had a pecuniary interest, without exercise of reasonable care or competence in obtaining or communicating the information."  (Dkt. No. 4, First Amend. Compl. ¶ 86 at 27.)  The plaintiffs allege that they "suffered pecuniary loss by justifiably relying on the representations."  (*Id.*)  "The elements of a cause of action for [negligent misrepresentation] are:  (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."  *LHC Nashua*

*P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 458 (5th Cir. 2011) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

When questioned during her deposition as to the misrepresentations underlying her negligent misrepresentation claim, the plaintiff failed to identify any specific misrepresentations, but, nevertheless, stated as follows:

> Q.   What facts did you ever have that nobody on this side of the table, none of the Defendants, ever intended to foreclose in December of 2012 as they initially noticed?
>
> A.   I know from their behavior with us that, you know, we almost felt like they were, you know, playing with us, because we would send them checks, they would send them back, they would say you need to provide us with a payment plan or, you know, say that you want to do a payment plan.  We sent them a letter, then they just kept saying you need to send us a payment plan.  We're, like, we're willing to do that; but how come you haven't made the next step to help us with that?  They said—they kept saying we were providing them with improper tender.  We attempted to provide them with different types of tender to pay.  Everything kept being returned to us.  *We felt like this was kind of like a joke.  You know, they never intended to work with us because of that*.  They just kept sending us letters.  Even if we were trying to pay, they wouldn't accept our payments.  *And so our feeling was we didn't—you know, we didn't trust them*.  I mean, if they said that they were going to foreclose in December and then, oh—oh, we're not going to foreclose in December.  It was just kind of a ploy just to drag it out, to wear us out to do whatever they needed to do.  That's—you know, that's—it was—we did not like how they dealt with us.  I did not like how they dealt with us.  *We just felt like they were not willing to take a step forward to work with us*.

(Dkt. No. 64, Ex. B at 158:13 – 159:18) (emphasis added).

Without more, the plaintiffs have failed to proffer any false oral or written statements attributable to any of the defendants that they justifiably relied upon and thereby, suffered injury from.  More importantly, plaintiff Jackson's *own* assertions that they "did not trust the defendants" or that they knew the defendants "never intended to work with them" would

make any reliance on their part unreasonable.  *See Grant Thornton, LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (reasoning that a plaintiff cannot justifiably rely on a representation if there are obvious indications that reliance is unwarranted). Further, since the crux of the plaintiffs' negligent misrepresentation claim concerns the defendants' alleged failed promises to perform some future act, their claim fails and the defendants are entitled to judgment as a matter of law.  *See Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp.2d 451, 456 (E.D. Tex. 2011) (quoting *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.-Houston [14 Dist.] 1999, pet. denied) ("[T]he sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of *existing fact*, not a promise of future conduct.") (emphasis in original).

### G.    The Plaintiffs' Claim for Breach of Fiduciary Duty

The plaintiffs, in their Seventh Claim for Relief, maintain that the attorney defendants, acting as trustee, breached their fiduciary duty to them by proceeding with the foreclosure sale of the Unit in spite of their knowledge "that numerous irregularities existed in posting the foreclosure sale."  (Dkt. No. 4, ¶ 88 at 28).   The plaintiffs further contend that the Association and/or CMC breached their fiduciary duty to them by circumventing the Declaration and charging them inflated late charges and other non-lien amounts in an effort to force a foreclosure of the Unit.  (*Id.*, ¶ 90 at 29).

Under Texas law, the attorney defendants, in their capacity as trustee, owed neither a fiduciary duty nor a duty of good faith and fair dealing to the plaintiffs, beyond that required by statute or the deed of trust to ensure a fair sale.  *See F.D.I.C. v. Meyers*, 955 F.2d 348, 350 (5th Cir. 1992) ("The trustee was obligated only to comply with the terms of the deed of trust, an obligation which the record reflects [was] performed.").   "Moreover, the Texas

Property Code insulates trustees from liability for 'any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorneys, agent, or representative or other third party." *Sanchez v. Wells Fargo Bank, N.A*, SA-13-CV-1069-XR, 2014 WL 722103, * 3 (W.D. Tex. 2014) (citing Tex. Prop. Code § 51.007(f).  Consequently, the plaintiffs cannot state a breach of fiduciary duty claim against the attorney defendants because they had no duty to conduct an independent investigation into the Association's underlying basis for foreclosure.  Rather, they need only to have acted "with absolute impartiality and fairness" in noticing the Unit for foreclosure and selling it.  *See Hammonds*, 559 S.W.2d at 347.  In executing this duty, they are permitted to rely on the Association and/or CMC's representations as to their underlying basis for the foreclosure.  *See* Tex. Prop. Code § 51.007(f) (stating that a trustee shall not be liable for any good faith error resulting from reliance upon information provided by a mortgagee or representative); *Townsend v. Barrett Daffin Frappier Turner & Engel, LLP*, 09–12–00564–CV, 2013 WL 5874607, at *6. (Tex. App.-Beaumont Oct. 31, 2013, pet. filed) (rejecting a borrower's claim that a trustee breached a fiduciary duty by failing to verify the whereabouts of the original note and deed of trust and by failing to verify whether there had been an assignment to another party)).

Likewise, the mere fact that the plaintiffs are residents and members of the Association does not create an individual fiduciary duty or relationship in the absence of some other fact or agreement between the parties.  *See Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp.2d 721, 735 (S.D. Tex. 2010).   Thus, the defendants are entitled to judgment as a matter of law on the plaintiffs' breach of fiduciary duty claim.

#### H.        The Plaintiffs' Claim for Declaratory Relief

The plaintiffs, in their Eighth Claim for Relief, seek "declaratory relief to determine their rights and true obligations under the agreements and statutes governing their ownership of the Property."   (Dkt. No. 4, First Amend. Compl. ¶ 92 at 30).   "The federal Declaratory Judgment Act [however] . . . does not create a substantive cause of action . . . [it] is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."   *O'Neill v. CitiMortgage, Inc.*, No. 4:13-cv-656-O, 2014 WL 1199338, at *4 (N.D. Tex. Mar. 24, 2014); *see also See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n. 3 (5th Cir. 1996) (reasoning that the Texas Uniform Declaratory Judgments Act is merely a procedural device and does not create any substantive rights or causes of action); *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 938 (5th Cir. 2012) (operation of federal Declaratory Judgment Act is procedural only).   "Thus, a plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists."   *Reid v. Aransas Cnty.*, 805 F. Supp.2d 322, 339 (S.D. Tex. 2011).

Since this Court has determined that the plaintiffs' substantive claims for relief fail, the plaintiffs cannot maintain a claim for declaratory relief.   Moreover, any declaration regarding what amounts are actually owed by the plaintiffs does not present a justiciable controversy because such amounts have already been paid in full from the proceeds of the foreclosure sale. *See Smith v. JPMorgan Chase Bank, N.A.*, No. 12-40816, 2013 WL 1165218, at *3 n.5 (5th Cir. Mar. 22, 2013) ("[b]ecause the district court properly rejected all of the [plaintiffs'] claims, it also correctly rejected their requests for an accounting and a declaratory judgment").

V.      **CONCLUSION**

Based on the foregoing analysis and discussion, the defendants' motions for summary

judgment are **GRANTED**; the plaintiffs' motion for partial summary judgment is **DENIED**.

It is so **ORDERED**.

SIGNED on this 30th day of September, 2015.

_____
Kenneth M. Hoyt
United States District Judge